AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| In the Matter of the Search of | | |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) ) ) ) ) | Case No.  24-SC-277 |
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH ONE ACCOUNT STORED AT PREMISES CONTROLLED BY SNIFFIES LLC, PURSUANT TO 18 U.S.C. 2703 FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. 2252(a)(2) | | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A (incorporated by reference)

Located within the jurisdiction of the District of Columbia, there is now concealed  *(identify the person or describe the property to be seized)*:

See Attachment B (incorporated by reference)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252(a)(2) (Distribution of Child Pornography) . | |

The application is based on these facts:

See Affidavit in Support of Application for Search Warrant.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Kelly McLeod*
_____
*Applicant's  signature*

Kelly McLeod, Special Agent
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
Telephone
_____ *(specify reliable electronic means).*

Date:  _____2/8/2024_____

_____
*Judge's signature*

City and state:  _____Washington, D.C._____

G. Michael Harvey
_____
(United States Magistrate Judge)

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

☑ Original ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

| | |
|---|---|
| In the Matter of the Search of ) | |
| *(Briefly describe the property to be searched* ) | |
| *or identify the person by name and address)* ) | Case No.  24-SC-277 |
| IN THE MATTER OF THE SEARCH OF INFORMATION ) | |
| ASSOCIATED WITH ONE ACCOUNT STORED AT PREMISES ) | |
| CONTROLLED BY SNIFFIES LLC, PURSUANT TO 18 U.S.C. 2703 ) | |
| FOR INVESTIGATIONS OF VIOLATIONS OF 18 U.S.C. 2252(a)(2) ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located within the jurisdiction of the District of Columbia. *(identify the person or describe the property to be searched and give its location)*:

See Attachment  A (incorporated by reference).

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment  B (incorporated by reference).

**YOU ARE COMMANDED** to execute this warrant on or before        February 21, 2024        *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to        G. Michael Harvey        .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:        2/8/2024        _____
*Judge's signature*

City and state:        Washington, D.C.        G. Michael Harvey
United States Magistrate Judge

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br><br>24-SC-277 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

| **Certification** |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

G. Michael Harvey

**<u>ATTACHMENT A</u>**

**ITEMS TO BE SEARCHED**

This warrant applies to information associated with Sniffies.com account username: 64b46faa0433caaee2516a09, with affiliated email address: verashula@gmail.com, (hereinafter referred to as SUBJECT ACCOUNT) which was active until at least July 25, 2023.

This information is stored at premises owned, maintained, controlled, or operated by Sniffies LLC, which is located at 8 The Green Suite B, Dover, Delaware, 19901.

## ATTACHMENT B

### DESCRIPTION OF ITEMS TO BE SEIZED AND SEARCHED

**I. Information to be disclosed by Sniffies LLC ("Sniffies")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Sniffies, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Sniffies, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on November 30, 2023, Sniffies is required to disclose the following information to the government for each account or identifier listed in Attachment A:

1. The contents of all communications, messages, and attachments associated with the SUBJECT ACCOUNT, including deleted, stored, or preserved (pursuant to 18 U.S.C. § 2703(f) or otherwise) communications sent to and from the account, draft communications, existing printouts of any such communications, the source and destination addresses associated with each communication, the date and time at which each communication was sent, and the size and length of each communication;

2. All records or other information regarding the identification of SUBJECT ACCOUNT, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses, phone numbers, or other identifying information provided during registration, associated email accounts, all screen and usernames (past and current) associated with the subscribers and/or accounts, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

3. All transactional information of all activity of the SUBJECT ACCOUNT or identifier described above, including log files, messaging logs, dates and times of connecting, methods of connecting, IP addresses associated with the outgoing and incoming messages;

4. All messaging and/or transactional logs, including date and time of messages and identification numbers associated with the device sending and receiving messages;

5. All records or other information regarding the devices associated with, or used in connection with, the SUBJECT ACCOUNT (including all device identifier information or cookie information, all current and past trusted or authorized devices and computers, and any devices used to access Sniffies' services) including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI"); The contents of all messages associated with the SUBJECT ACCOUNT, including stored or preserved copies of messages (including iMessages, SMS messages, and MMS messages) sent to and from the SUBJECT ACCOUNT (including all draft and deleted messages), the source and destination account or phone number associated with each message, the date and time at which each message was sent, the size and length of each message, the actual IP addresses of the sender and the recipient of each message, and the media, if any, attached to each instant message;

3

6. All records indicating the services available to the subscriber(s) of the SUBJECT ACCOUNT;

7. The services and types of services the SUBJECT ACCOUNT utilized and all records generated by those services;

8. All records or other information stored at any time by an individual using the SUBJECT ACCOUNT, including address books, contact and buddy lists, calendar data, pictures, and files;

9. Identity of other accounts or services sharing the recovery account or telephone number or other two-factor authentication methods used for the SUBJECT ACCOUNT and the services the SUBJECT ACCOUNT used and all records generated by those services;

10. All information obtained from any cookies, beacons, geotags, or pixel tags associated with the SUBJECT ACCOUNT;

11. All location information associated with the SUBJECT ACCOUNT;

12. All web history, including search terms for the SUBJECT ACCOUNT;

13. All records indicating the services available to subscribers of the SUBJECT ACCOUNT;

15. All information about the device or devices used to access or use the SUBJECT ACCOUNT;

16. All privacy and account settings;

17. All records pertaining to communications between Sniffies and any person regarding the SUBJECT ACCOUNT, including contacts with support services and records of actions taken;

18. A list of all of the people that the SUBJECT ACCOUNT follows and all people who are following the SUBJECT ACCOUNT (i.e., the user's "following" list and "followers" list), as well as any friends of the SUBJECT ACCOUNT;

19. A list of all users that the SUBJECT ACCOUNT has "unfollowed" or blocked;

20. All records of searches performed by the SUBJECT ACCOUNT, including all past searches saved by the SUBJECT ACCOUNT;

21. All information about connections between the SUBJECT ACCOUNT and third-party websites and applications;

22. All data and information associated with any profile page, including photographs, "bios," and profile backgrounds and themes;

23. All images, videos, Sniffies LivePlay, and documents sent, received, or otherwise associated with the SUBJECT ACCOUNT, to include all available EXIF data or other metadata for those images and documents.

24. All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to the Provider (e.g., including, but not limited to, keybag.txt and fileinfolist.txt files).

25. All records and information regarding location(s) of the SUBJECT ACCOUNT or devices associated with the SUBJECT ACCOUNT, including all data stored in connection with any location-based services, maps, or other services used.

## II.   Search Protocol

Sniffies LLC shall deliver the information set forth above within 14 days of the service of this warrant. Sniffies shall send the information electronically or via United States mail, and where maintained in electronic form, on CD-ROM or an equivalent electronic medium, to:

Special Agent Kelly McLeod
FBI Washington Field Office
601 4th St NW Washington, DC 20535

Records can be provided electronically to SA McLeod at kamcleod@fbi.gov. Pursuant to 2703(g), the presence of an agent is not required for service or execution of this warrant.

1. The search warrant will be presented to personnel of Sniffies, who will be directed to isolate those accounts and files described in Section I above;

2. In order to minimize any disruption of computer service to innocent third parties, Sniffies and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the computer accounts and files described in Section I above, including an exact duplicate of all information stored in the SUBJECT ACCOUNT and files described above;

3. Sniffies will provide the exact duplicate in electronic form of the SUBJECT ACCOUNT and information described in Section I above and all information stored in those accounts and files to the agent who serves the search warrant; and

4. Law enforcement personnel will thereafter review all information and records received from Sniffies to determine the information to be seized by law enforcement personnel specified in Section III.

## III.    Information to be seized by the government

All information described above in Section I that constitutes evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Section 2252(a)(2) and (b)(1) (Distribution of Child Pornography) (the "Target Offense"), including information pertaining to the following matters:

1. All attachments, messages, communications, files, geographic location information including IP address information, and related message, records, or information that identify the SUBJECT ACCOUNT creator, user, individual(s), or correspondent(s) engaged in the Target Offenses, or that identifies the means or methods used regarding such;

2. Images, correspondence, and other records that help identify the user of the SUBJECT ACCOUNT;

3. Location information associated with the SUBJECT ACCOUNT that is relevant to the Target Offenses and/or helps identify the user of the SUBJECT ACCOUNT or events relating to the crime to determine the chronological and geographic context of account access, use, and events relating to the crime and to the SUBJECT ACCOUNT owner and the owner's contacts that are evidence of the crime under investigation;

4. Information obtained by Sniffies or using cookies, web beacons, or pixel tags that help identify who may have participated in the Target Offenses;

5. EXIF or other metadata about images, videos, documents, or correspondence reflecting a sexual interest in children, or that help identify the device or person who uses the SUBJECT ACCOUNT or committed the Target Offenses;

6. Information about the devices used to access the SUBJECT ACCOUNT that is evidence of or identifies the user of the account or persons committing the Target Offenses;

7. Records and information concerning membership in online groups, clubs, or services that could help to identify the user of the SUBJECT ACCOUNT and/or the person who committed the Target Offenses;

8. Records and information related to the known associates, or any others associated with the SUBJECT ACCOUNT, including biographical information, addresses, email addresses, user names, social security numbers, or other pertinent identifying information;

9. Evidence indicating how and when the SUBJECT ACCOUNT was accessed or used, to determine the chronological and geographic context of account access, use and events relating to the crime under investigation and the account subscriber;

10. All saved "chat" or messaging transcripts from the account opening through the account closure that are relevant to the Target Offenses or otherwise identify the user of the SUBJECT ACCOUNT and/or reflect an interest in sexual conduct with minors;

11. Any and all records, documents, visual depictions, and materials pertaining to child pornography, child erotica, an interest in such materials, or pertaining to a sexual interest in children, or sexual activity involving children, or intent or plans to engage in sexual activity involving children;

12. Any and all information, notes, software, documents, records, or correspondence, in any form and medium pertaining to any minor who is, or appears to be, the subject of any visual depiction of child pornography, child erotica, sexual activity with other minors or adults, or of sexual interest, or that may be helpful in identifying any such minors;

13. Evidence indicating the subscriber's state of mind as it relates to the Target Offenses;

14. Evidence that may identify any co-conspirators or aiders and abettors, including records that help reveal their whereabouts;

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH ONE
ACCOUNT STORED AT PREMISES
CONTROLLED BY SNIFFIES LLC,
PURSUANT TO 18 U.S.C. 2703 FOR
INVESTIGATION OF VIOLATIONS OF
18 U.S.C. 2252(a)(2)

SC No. 24-277

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A**
**WARRANT TO SEARCH AND SEIZE**

I, Kelly McLeod, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I am a Special Agent with the Federal Bureau of Investigation and have been since
September 2019. I am thus a "federal law enforcement officer" as defined by Fed. R. Crim. P.
41(a)(2)(C). I am currently assigned to a Child Exploitation and Human Trafficking Task Force
at the Washington Field Office, where I am responsible for investigating the possession,
distribution, receipt, and production of child pornography, as well as other crimes concerning the
sexual exploitation of minors. I was previously assigned to the FBI Washington Field Office Joint
Terrorism Task Force, where I worked national security investigations. I have executed search
warrants and arrest warrants, seized and searched electronic devices, and examined electronic
devices to obtain evidence. As part of my duties as a Special Agent, I investigate criminal child
exploitation and child pornography violations, including the illegal production, distribution,
transmission, receipt, and possession of child pornography, in violation of 18 U.S.C. §§ 2251,
2252 and 2252A and crimes related to sex trafficking and other commercial sex offenses in
violation of 18 U.S.C. §§ 1591 and 1952. As a Federal Agent, I am authorized to investigate
violations of laws of the United States and to execute warrants issued under the authority of the

9

United States.

2.     This affidavit is submitted in support of an application for a search warrant for the Sniffies.com account associated with username 64b46faa0433caaee2516a09 described more fully in Attachment A (the "SUBJECT ACCOUNT,") for evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Section 2252(a)(2) (Distribution of Child Pornography) (the "Target Offense"), more specifically described in Attachment B, which I believe to be presently located within the content of Sniffies.com SUBJECT ACCOUNT, which is located at premises owned, maintained, controlled, or operated by Sniffies, LLC.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant. It does not set forth all of my knowledge, or the knowledge of others, about this matter.

4.     Unless otherwise specified, all dates set forth below are "on or about" the dates indicated, and all amounts or sums are approximate. Additionally, unless otherwise noted, wherever in this affidavit it is asserted that a statement was made by an individual, that statement is described in substance, and in part, and is not intended to be a verbatim recitation of the entire statement.

**PROBABLE CAUSE**

5.     The National Center for Missing and Exploited Children (NCMEC) is a non-profit 501(c)(3) organization that serves as a national clearinghouse and resource center for families, victims, private organizations, law enforcement, and the public on missing and sexually exploited children. NCMEC operates a CyberTipline and Child Victim Identification program. Through the Cyber Tipline, Internet Service Providers (ISP), Electronic Service Providers (ESP), and

individual persons may notify NCMEC of online child sexual abuse images. NCMEC makes information submitted to the CyberTipline and Child Victim Identification Program available to law enforcement agencies.

6.      On July 25, 2023, a representative of NCMEC received a report regarding attempted child exploitation on an online application from an employee of Sniffies[1]. The Sniffies employee reported that the Sniffies user #64b46faa0433caaee2516a09 had "before suspension…actively [sought] underage."

7.      Sniffies provided transcripts of the reported user's messages to other users which included the following,

   *1.      That's hot. Cheating is kind of hot. Cheating makes me wanna go on face book and look at beach pics of people's kids*
   *2.      Wow. Yeah 10 to 12 yr old cock is beautiful*
   *3.      I wish. Youngest was 16. Love their tiny hairless child cocks. U?*
   *4.      Nice man. Remove 500 from any number I write Yeah there's a boy that I first noticed him when he was 508. That's younger than I like, but I noticed him. When he was 510 and 511 he was hottest. I've kept track of him on his mom's facebook...he's like 515 now but still hot. But I wanted to most see him nude when he was 510 and 511*
   *5.      If u have tele, I'm @ethaneffex*

8.      Based on my training and experience, your affiant is aware that "tele" can be used as shorthand for the Telegram social media application.

9.      Sniffies advised that the reported account is registered to a user who provided an email address of verashula@gmail.com and accessed the account from an internet protocol (IP) address of 166.198.21.127 on July 25, 2023. Sniffies also reported that the user's estimated location on July 25, 2023, was in Silver Spring, Maryland.

---

[1] Sniffies is an interactive, map-based hookup web app for gay, bisexual, and bicurious men. The website features a map that shows the approximate locations of nearby users who are currently or recently online, as well as active groups and popular meeting spots in the area.

10.     NCMEC subsequently forwarded this investigation to the Maryland Internet Crimes Against Children (ICAC) Task Force, which assigned the investigation to the Montgomery County Police Department (MCPD) ICAC Task Force. The MCPD ICAC issued an administrative subpoena for subscriber information for the Google account of Verashula@gmail.com. Google advised that the account is linked to an AT&T phone number of 202-255-7814.

11.     MCPD ICAC also issued an administrative subpoena for subscriber information regarding the identified phone number. AT&T advised that the AT&T subscriber is Michael Everts of XXXX Q Street #XXX in Northwest, Washington, D.C. 20009. MCPD ICAC then forwarded this investigation to the Metropolitan Police Department (MPD) ICAC for further investigation.

12.     On September 26, 2023, the MPD ICAC was assigned this investigation regarding the reported Sniffies user and requested that an administrative subpoena be issued for the email address, verashula@gmail.com. Google, LLC provided the requested information which indicated that the user had a recovery email of iphonefit@gmail.com and a recovery phone number of 202-255-7814, which is registered to AT&T Wireless.

13.     The MPD ICAC further requested that an administrative subpoena be issued for the Google account of iphonefit@gmail.com. Google indicated that the account is registered to a user with a name of Michael EE, a recovery email of everts@fit-dc.com, and a recovery phone number of 202-255-7814. Additionally, the account had been linked to Google Pay with a financial instrument linked to Michael Everts with a billing address of XXXX Q Street #XXX in Northwest, Washington, D.C., 20009.

14.     Law enforcement conducted records checks of commercial, law enforcement only, and open-source databases for any information regarding 202-255-7814. Queries revealed that Michael Everts (DOB 08/17/1975) was listed as a juvenile's emergency contact using the

referenced telephone number and had been contacted by law enforcement after the juvenile was suspected of suspicious online activity on January 12, 2023.

15.     On September 26, 2023, an online covert employee (OCE) of the Federal Bureau of Investigation (FBI) Washington Field Office working out of a satellite office in the District of Columbia (D.C.) contacted the Telegram user @ethaneffex, based upon the earlier Sniffies message indicating that had been provided to law enforcement. The OCE had the following initial conversation with the user,

> OCE:  What's up, 35 dad here.
> @ethaneffex:  Nice. 39.  How old is your son? :)
> OCE:  About to turn 11.
> @ethaneffex:  Hottest age ever…I fell in love with my neighbor a few years back when he was 9sih.  His hottest age was 10/11…sadly he's like 15 now…still hot tho.  Your boy athletic and hot?

16.     @ethaneffex indicated that his neighbor's name is "[Minor 1]"[2] and reported that he "secretly film[s] him with my phone on the playground mostly" and advised, "…The best violation was when he was once in my house.  Prob9 yes old.  He was leaning forward and there was a gap in the back of his jeans.  I could see way down and see his beautiful underwear shaped over his beautiful child buns."

17.     @ethaneffex asked the OCE, "When did u start playing with Jr?  No judgement…." and the OCE indicated he had been sexually abusing his son since "he was very little." @ethaneffex reported, "Amazing…Sorry if I have gaps in response…at work…Is his penis super tiny?"

18.     The OCE asked @ethaneffex, "Do you perv to anything good?  I never get to see the new stuff…"  @ethaneffex advised, "I've had luck finding guys on grindr that are at a hotel

---

[2] The names of all minors have been omitted for purposes of this complaint in order to protect the privacy of the minor.

and have kiddie porn..everyonce in a while…I usually don't keep anything other than the Facebook pics I swipe of [Minor 1] and other local kids, neighbors, my friends kids".

19.     On September 27, 2023, at approximately 7:14 am, @ethaneffex forwarded four photographs of prepubescent boys to the OCE. Three of the photographs displayed prepubescent and pubescent males wearing brief style underwear and the fourth photograph displayed a prepubescent male wearing pink in color underwear with an adult male standing behind him with an erect penis appearing to be inserted into his anus. The image appears to be a morphed photograph of two images put together to create the appearance that a child is being penetrated by an adult male's erect penis.

20.     The OCE and @ethaneffex continued to communicate via Telegram and @ethaneffex continued to forward images and videos of prepubescent and pubescent males to the OCE. @ethaneffex specifically forwarded photographs of two boys and indicated one of the boys was "[Minor 1]" and the other was "[Minor 2]."  @ethaneffex continued to report that [Minor 1] is a family friend's child and [Minor 2] is a child that he sees at wrestling practice. @ethaneffex advised regarding [Minor 2], "…I really had opportunities to try and touch [Minor 2]'s tiny dick at wrestling practice. It was a bit of torture trying to resist.  Paranoia helps ha." @ethaneffex then forwarded a photograph of what appears to be a young boy wearing a blue in color wrestling outfit. The photograph appears to have been taken looking up at the child from the ground.

21.     @ethaneffex advised he was interested in seeing the OCE's purported son and asked, "Did u get so hard showing him off?" The OCE indicated that he had "…loved it" and stated, "It's just tough finding people I can trust." @ethaneffex responded, "I get it. That's why I don't push too hard.  I think o[n]ce you're clear that I'm a reliable pedo, it's will be obvious we both a lot about discretion and secrecy ha.  Especially since I'm showing you the two local boys I

wanna plow the most, [Minor 2] and [Minor 1].  I wanna take them to a bathhouse and watch 20 guys fuck their tight pink child holes, rough…no condoms allowed."

22.     @ethaneffex then forwarded four photographs of a Caucasian adult male with one photograph showing the face of the adult male and indicated to the OCE that the photographs were of him. In the course of the investigation, your affiant had reviewed the District of Columbia driver's license of Michel Everts, as well as publicly available social media, and the adult male in the photographs appeared to be Michael Everts.

23.     The OCE indicated that he resided in the Washington, D.C. area and @ethaneffex reported that he also lives in the area. @ethaneffex reported that he would be interested in meeting with the OCE and reported, "My favorite ages are 9 to 12ish.  Lots of hot kids in the NW area of DC."

24.     As described below, @ethaneffex continued to forward numerous photographs of prepubescent and pubescent boys who are nude and exposing their genitals. Additionally, @ethaneffex forwarded more photographs of children he indicated that he knew and photographs of children wrestling with one and another. @ethaneffex also forwarded the following image and video to the OCE on October 24, 2023,

1.  An image of a prepubescent boy's lower body photographed from the back completely nude with his anus exposed to the camera. An adult male's erect penis is observed pressed against the child's left buttocks.

2.  A video of a young boy who appeared to be in the early stages of puberty and was completely nude while on all fours on a bed. The boy is being penetrated by the penises of two adult males in the mouth and in the anus and one of the adult males removes his penis from the child's mouth and then masturbates over his head.

25.     The OCE and @ethaneffex discussed the sexual abuse of the OCE's purported son, and @ethaneffex provided suggestions for how the OCE should dress the fictional child. @ethaneffex also indicated that he was interested in sexually abusing the child. The OCE indicated he intended to sexually abuse the child on October 24, 2023, and @ethaneffex messaged the OCE on October 25, 2023, "U get some nice pics and vids last night?"

26.     On November 9, 2023, @ethaneffex messaged the OCE, "I wish we knew a pedo priest that would invite us over to fuck tiny alter boys all together" and then forwarded the following two videos,

1.  A video of an adult male and prepubescent boy laying on a piece of furniture covered in a white sheet. The adult male is kissing the boy while masturbating his own penis and then pulls down the child's pants. The adult male then inserts child's penis into his mouth.

2.  A video of an adult male walking in front of numerous prepubescent and pubescent males standing in a line outside wearing shorts and underwear. The adult male walks in front of the boys and touches their stomachs then touches their covered genitals.

27.     @ethaneffex forwarded numerous voice memos to the OCE during the chat communication. @ethaneffex indicated in these voice memos an interest in sexually abusing "[Minor 1]" and other minors and indicated what he wanted to do to the boys he had sent photographs of.

28.     A member of the FBI Washington Field Office (WFO) conducted a search of open-source databases for information regarding the children identified by @ethaneffex as "[Minor 1]" and "[Minor 2]." The member subsequently located information indicating that both boys were real children who reside in Northwest, Washington, D.C.

29.     On November 14, 2023, @ethaneffex messaged the OCE, "Do you have 0 doubts I'm an actual pedophile?" and the OCE advised, "I always have doubts….I'd feel 100% if you sent some real fucked up vids lol." @ethaneffex asked the OCE, "What happens when u feel 100%?" and the OCE indicated, "Oh…things 😈."

30.     @ethaneffex altered the settings of the Telegram chat with the OCE and set the chat's "self-destruct timer to 1 hour[3]." @ethaneffex then forwarded the following video,

> 1.     A one (1) minute and thirty-two (32) second long video that shows two prepubescent males laying on a bed. One of the boys is nude from the stomach down with his penis exposed to the camera. The second boy is observed manipulating and masturbating the first boy's penis which is erect.

31.     @ethaneffex advised after sending the video, "Now it's 100% verified.  I'm a pedophile.  I sent kiddie porn."  The OCE later messaged @ethaneffex, "Also you don't trust me anymore lol.  Self destruct button!!!!!" @ethaneffex responded by stating, "Oh that was just for something else…a picture maybe?  Oh that was because I sent the child porn…To protect us both."

32.     On November 27, 2023, at approximately 3:53 pm, the OCE asked @ethaneffex if he would be "down for coffee tomorrow?  Just to meet.  Say hi?"  @ethaneffex advised, "I'd have to prob do it last minute.  Also have to think it thru.  I sent kiddie porn to you, so I'm already outed as a pedophile, so for me there's that bit of risk.  Gotta think it thru."

33.     On November 28, 2023, at approximately 10:49 a.m., @ethaneffex agreed to meet the OCE outside of the Apple Store at 801 K Street Northwest, Washington, D.C. at approximately 12:30 p.m. @ethaneffex advised after agreeing to meet, "Yeah.  I've got one idea to better set it

---

[3] The Telegram messaging application allows users to configure the messenger to delete messages from the chat log after a specific amount of time has passed.  Telegram refers to this feature as a "self-destruct timer."

up too, to give us both an out/deniability if we panick…" @ethaneffex again altered the settings of the Telegram messenger to "self-destruct timer to 1 hour" and sent the following message, "Either email or text my office # or email 'Found your number/Email online.  Can we set up a consultation to discuss fitness training' I'll respond that we can., and you say that time and location.  Then it means we are meeting for a professional reason…of course we will meet and let the conversation drift to where it needs to go.  What u think?" The OCE indicated that was a "smart move" and @ethaneffex provided a phone number of 202-255-7814. The OCE recognized the phone number as a number associated with Michael Evert and linked to the Google account verashula@gmail.com.

34.     The OCE messaged the phone number and received the following response, "That would be great.  Thank you for your interest.  When would be a good time to meet?  Would this be your first time working with a trainer?  Best, Mike."

35.     At approximately 12:30 p.m., the OCE observed an adult male in the front of 801 K Street Northwest who appeared to be Michael Everts. The OCE waved to the individual and they approached each other. The OCE greeted the male who introduced himself as "Mike". The OCE immediately recognized the male to be Michael Everts.

36.     The OCE and Everts walked in front of 801 K Street Northwest and discussed Everts' fitness business and then discussed their level of interest in pedophilia. During the course of this conversation, the OCE provided a hand signal to an arrest team and Everts was subsequently taken into custody by members of the FBI Child Exploitation and Human Trafficking Task Force.

37.     Pursuant to his arrest, various personal effects to include a Samsung cellular phone, Model: SMS908U, IMEI: 350962378939745, were collected from Everts' person. On December 4, 2023, the Honorable G. Michael Harvey, United States Magistrate Judge for the United States

District Court for the District of Columbia, issued a search warrant for the cellular phone. A review of the device revealed over 4500 images and videos identified as child sexual abuse material, as well as numerous Telegram conversations involving the same Telegram account that engaged with the OCE.

## INFORMATION ABOUT SNIFFIES.COM

38.     From my review of publicly available information provided by Sniffies.com about its service, I am aware of the following about Sniffies.com:

39.     Sniffies.com is self-advertised as a "location-based social networking app for gay, bi, and curious guys looking to meet likeminded partners to explore their sexuality." Sniffies.com users are referred to by Sniffies.com as "Cruisers".

40.     Sniffies.com is a website made by Sniffies LLC and can be accessed using any Internet browser on a mobile device, laptop, or desktop computer. Sniffies.com provides Cruisers a way to connect through "Interactive Services" via "User Contributions."

41.     Interactive Services are personal profiles, one-to-one video chat (Sniffies LivePlay), messaging, comment sections, interactive map, and other interactive features. User Contributions use Interactive Services to post, submit, publish, display, or transmit to other users or other persons content or materials on or through Sniffies.com.

42.     Cruisers can choose to create an account or use the site anonymously. Sniffies.com advertises that they have built-in tools for anonymity. While Sniffies.com is a location-based website, they allow the optional use of "pseudo-locations" so that other Cruisers cannot see your exact location.

43.     Cruisers can connect by clicking on another Cruiser's profile to begin chatting. There is also a global chat, where Cruisers can post a message for all online Cruisers in the area to see.

44.     The map shows the approximate location of all online Cruisers in a given area, popular meet-up locations, and Group events.

## CHARACTERISTICS OF INDIVIDUALS WITH A SEXUAL INTEREST IN CHILDREN AND WHO COMMIT CHILD PORNOGRAPHY OFFENSES

45.     The information set forth in this Affidavit—which indicates that Everts discussed sexually abusing children and distributed child sexual abuse material using an application on a mobile device and the internet – suggests that Everts has a sexual interest in children or in sexually explicit images and videos of children. Your affiant's knowledge of these types of individuals and their characteristics is based on your affiant's experience as a law enforcement agent and the training your affiant has received focusing on crimes against children. Based upon such training and experience, as well as upon information provided to me by other law enforcement officers, your affiant is aware of the following general characteristics, which may be exhibited in varying combinations:

    a.      Individuals who have a sexual interest in children or images of children may receive sexual gratification, stimulation, and satisfaction from contact with children, from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses (such as in person, in photographs, or other visual media), or from literature describing such activity.

    b.      Such individuals may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Such individuals oftentimes use these

materials for their own sexual arousal and gratification. They may also use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts. With the development of technology, digital devices are used to search for, access, download, possess, receive, and distribute these materials.

c.      This child pornographic material is usually maintained in the privacy and security of their home or some other secure location. Such materials are commonly found on digital devices during the execution of search warrants at people's homes.

d.      Likewise, such individuals often maintain their collections that are in a digital or electronic format in a safe, secure, and private environment, such as a computer or mobile computing devices, including smartphones and tablets. These collections are often maintained for several years and are kept close by, usually at the individual's residence, or on the individual's person, to enable the individual to view the collection at any time. These individuals often take steps to ensure that other individuals, who do not share their sexual interest in children, cannot access these devices and discover what is contained therein. Here, Everts used a mobile computing device to send images depicting the sexual abuse of children to the OCE. He chose to do so using an application that uses end-to-end encryption which individuals use because they believe it is "safe" and that it will help them evade law enforcement detection.

e.      Due to the accessibility and availability of child pornography on the Internet, in your affiant's recent experience, instead of maintaining collections, some such individuals engage in a pattern of viewing or downloading child pornography online and then deleting the material. It is also not uncommon for offenders to commit child

pornography violations using only mobile computing devices, such as smart phones and tablets or for these individuals to store these materials in a cloud/online storage account in an effort to avoid law enforcement detection.

       f.     Such individuals also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography. Such items are commonly found on these individuals' mobile computing devices. As mentioned above, Everts used a digital application to communicate with an individual that he believed had a sexual interest in children, and who was sexually abusing his own child.

       g.     Such individuals prefer not to be without access to child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

## TECHNICAL TERMS

46. Based on my training and experience, and information acquired from other law enforcement officials with technical expertise, I know the terms described below have the following meanings or characteristics:

       a.     "Digital device," as used herein, includes the following three terms and their respective definitions:

          1)     A "computer" means an electronic, magnetic, optical, or other high speed data processing device performing logical or storage functions, and includes any data storage

facility or communications facility directly related to or operating in conjunction with such device. *See* 18 U.S.C. § 1030(e)(1). Computers are physical units of equipment that perform information processing using a binary system to represent information. Computers include, but are not limited to, desktop and laptop computers, smartphones, tablets, smartwatches, and binary data processing units used in the operation of other products like automobiles.

2)      "Digital storage media," as used herein, means any information storage device in which information is preserved in binary form and includes electrical, optical, and magnetic digital storage devices. Examples of digital storage media include, but are not limited to, compact disks, digital versatile disks ("DVDs"), USB flash drives, flash memory cards, and internal and external hard drives.

3)      "Computer hardware" means all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, modems, routers, scanners, and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

b.      "Wireless telephone" (or mobile telephone, or cellular telephone), a type of digital device, is a handheld wireless device used for voice and data communication at least in part through radio signals and also often through "wi-fi" networks. When communicating via radio signals, these telephones send signals through networks of transmitters/receivers, enabling

communication with other wireless telephones, traditional "land line" telephones, computers, and other digital devices. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of applications and capabilities. These include, variously: storing names and phone numbers in electronic "address books"; sending, receiving, and storing text messages, e-mail, and other forms of messaging; taking, sending, receiving, and storing still photographs and video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; utilizing global positioning system ("GPS") locating and tracking technology, and accessing and downloading information from the Internet.

        c.      A "tablet" is a mobile computer, typically larger than a wireless phone yet smaller than a notebook, that is primarily operated by touch-screen. Like wireless phones, tablets function as wireless communication devices and can be used to access the Internet or other wired or wireless devices through cellular networks, "wi-fi" networks, or otherwise. Tablets typically contain programs called applications ("apps"), which, like programs on both wireless phones, as described above, and personal computers, perform many different functions and save data associated with those functions.

        d.      A "GPS" navigation device, including certain wireless phones and tablets, uses the Global Positioning System (generally abbreviated "GPS") to display its current location, and often retains records of its historical locations. Some GPS navigation devices can give a user driving or walking directions to another location, and may contain records of the addresses or locations involved in such historical navigation. The GPS consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly

transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.      "Computer passwords and data security devices" means information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates as a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

f.      "Computer software" means digital information which can be interpreted by a computer and any of its related components to direct the way they work. Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

g.      Internet Protocol ("IP") Address is a unique numeric address used by digital devices on the Internet. An IP address, for present purposes, looks like a series of four numbers, each in the range 0-255, separated by periods (*e.g.*, 149.101.1.32).  Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service

providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

h.       The "Internet" is a global network of computers and other electronic devices that communicate with each other using numerous specified protocols. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

i.       "Internet Service Providers," or "ISPs," are entities that provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers, including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment. ISPs can offer a range of options in providing access to the Internet, including via telephone-based dial-up and broadband access via digital subscriber line ("DSL"), cable, dedicated circuits, fiber-optic, or satellite. ISPs typically charge a fee based upon the type of connection and volume of data, called bandwidth, which the connection supports. Many ISPs assign each subscriber an account name, a user name or screen name, an e-mail address, an e-mail mailbox, and a personal password selected by the subscriber.  By using a modem, the subscriber can establish communication with an ISP and access the Internet by using his or her account name and password.

j.       A "modem" translates signals for physical transmission to and from the ISP, which then sends and receives the information to and from other computers connected to the Internet.

k.       A "router" often serves as a wireless Internet access point for a single or multiple devices, and directs traffic between computers connected to a network (whether by wire or wirelessly). A router connected to the Internet collects traffic bound for the Internet from its

client machines and sends out requests on their behalf. The router also distributes to the relevant client inbound traffic arriving from the Internet. A router usually retains logs for any devices using that router for Internet connectivity. Routers, in turn, are typically connected to a modem.

l.      "Domain Name" means the common, easy-to-remember names associated with an IP address. For example, a domain name of "www.usdoj.gov" refers to the IP address of 149.101.1.32. Domain names are typically strings of alphanumeric characters, with each level delimited by a period. Each level, read backwards – from right to left – further identifies parts of an organization. Examples of first-level, or top-level domains are typically .com for commercial organizations, .gov for the governmental organizations, .org for organizations, and .edu for educational organizations. Second-level names will further identify the organization, for example usdoj.gov further identifies the United States governmental agency to be the Department of Justice. Additional levels may exist as needed until each machine is uniquely identifiable. For example, www.usdoj.gov identifies the World Wide Web server located at the United States Department of Justice, which is part of the United States government.

m.      "Cache" means the text, image, and graphic files sent to and temporarily stored by a user's computer from a website accessed by the user in order to allow the user speedier access to and interaction with that website in the future.

n.      "Peer to Peer file sharing" (P2P) is a method of communication available to Internet users through the use of special software, which may be downloaded from the Internet. In general, P2P software allows a user to share files on a computer with other computer users running compatible P2P software. A user may obtain files by opening the P2P software on the user's computer and searching for files that are currently being shared on the network. A P2P file transfer is assisted by reference to the IP addresses of computers on the network: an IP address identifies

the location of each P2P computer and makes it possible for data to be transferred between computers. One aspect of P2P file sharing is that multiple files may be downloaded at the same time. Another aspect of P2P file sharing is that, when downloading a file, portions of that file may come from multiple other users on the network to facilitate faster downloading.

      i.      When a user wishes to share a file, the user adds the file to shared library files (either by downloading a file from another user or by copying any file into the shared directory), and the file's hash value is recorded by the P2P software. The hash value is independent of the file name; that is, any change in the name of the file will not change the hash value.

      ii.      Third party software is available to identify the IP address of a P2P computer that is sending a file. Such software monitors and logs Internet and local network traffic.

      o.      "VPN" means a virtual private network. A VPN extends a private network across public networks like the Internet. It enables a host computer to send and receive data across shared or public networks as if they were an integral part of a private network with all the functionality, security, and management policies of the private network. This is done by establishing a virtual point-to-point connection through the use of dedicated connections, encryption, or a combination of the two. The VPN connection across the Internet is technically a wide area network (WAN) link between the sites. From a user perspective, the extended network resources are accessed in the same way as resources available from a private network-hence the name "virtual private network." The communication between two VPN endpoints is encrypted and usually cannot be intercepted by law enforcement.

p.      "Encryption" is the process of encoding messages or information in such a way that eavesdroppers or hackers cannot read it but authorized parties can. In an encryption scheme, the message or information, referred to as plaintext, is encrypted using an encryption algorithm, turning it into an unreadable ciphertext. This is usually done with the use of an encryption key, which specifies how the message is to be encoded. Any unintended party that can see the ciphertext should not be able to determine anything about the original message. An authorized party, however, is able to decode the ciphertext using a decryption algorithm that usually requires a secret decryption key, to which adversaries do not have access.

q.      "Malware," short for malicious (or malevolent) software, is software used or programmed by attackers to disrupt computer operations, gather sensitive information, or gain access to private computer systems. It can appear in the form of code, scripts, active content, and other software. Malware is a general term used to refer to a variety of forms of hostile or intrusive software.

## **CONCLUSION**

47. Based on my training and experience and the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that Michael Everts committed the following offenses: Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1), on or about October 24, 2023, November 9, 2023, and November 14, 2023. I submit that this affidavit supports probable cause for a warrant to search the SUBJECT ACCOUNT described in Attachment A and to seize the items described in Attachment B.

Respectfully submitted,

_Kelly McLeod_

_____

Kelly McLeod
Special Agent
Federal Bureau of Investigation


Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on February 8, 2024.


_____

HONORABLE G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE